NOT DESIGNATED FOR PUBLICATION

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### KA 11-396

**STATE OF LOUISIANA**

**VERSUS**

**GARRY WAYNE MCCLINTON, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 297,224
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

Glenn G. Cortello
201 Johnston St., Ste. 400
Alexandria, LA 71301
(318) 445-0022
Counsel for Defendant/Appellant:
Garry Wayne McClinton, Jr.

 James C. Downs
District Attorney
701 Murray Street
Alexandria, LA 71301
(318) 473-6650
Counsel for Plaintiff/Appellee:
State of Louisiana

**Michael W. Shannon**
**P.O. Box 1792**
**Alexandria, LA 71309**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**EZELL, Judge.**

The Defendant, Garry Wayne McClinton, Jr., was charged by bill of information filed on June 25, 2009, with attempted second degree murder, in violation of La.R.S. 14:30.1 and La.R.S. 14:27; unauthorized use of a motor vehicle, in violation of La.R.S. 14:68.4; and unauthorized entry of an inhabited dwelling, in violation of La.R.S. 14:62.3. The Defendant entered a plea of not guilty to all charges on July 10, 2009.

July selection commenced on May 18, 2010, and the Defendant was found guilty of the responsive verdict of aggravated battery, in violation of La.R.S. 14:34; guilty of unauthorized use of a motor vehicle; and not guilty of unauthorized entry of an inhabited dwelling. The Defendant was sentenced on June 14, 2010, to serve ten years at hard labor for aggravated battery and ten years at hard labor for unauthorized use of a motor vehicle. The sentences were to be served consecutively. On July 13, 2010, the Defendant filed a "MOTION TO AMEND MINUTES NUNC PRO TUNC CORRECT SENTENCE, OR RECONSIDER SENTENCE." A "SUPPLEMENTAL MOTION TO RECONSIDER SENTENCE" was filed on July 27, 2010. A hearing on the motions was held on March 24, 2011, and they were denied on September 1, 2010.

A pro se motion for appeal was filed on July 14, 2010, which was subsequently granted. Counsel filed a motion for appeal on January 19, 2011, and that motion was also granted. The Defendant is now before this court asserting forty-four assignments of error.

**FACTS**

The Defendant dated Ruby Jones's daughter, Anlanette. Jones disapproved of the relationship and told the Defendant he was not welcome at her home. On March 8, 2009, the Defendant entered Jones's home, stabbed her, took the keys to her vehicle, and drove away in that vehicle.

The facts of the case are further discussed in assignments of error number four and thirty-nine.

**ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE**

The Defendant contends defense counsel filed no motions other than a motion for preliminary examination. The remaining motions were filed pro se. Prior to trial, the State filed a "768 Notice to Defendant" asserting its intent to use an inculpatory statement made by him, allegedly taking the defense by surprise. The Defendant contends the trial court erred by allowing the notice to be filed and the statement to be used. The Defendant contends the statement should have been provided to him during the discovery phase, although defense counsel relied on informal discovery.

The State contends it filed the Article 768 notice on the date trial commenced, but prior to its opening statement. The State further contends that at the time of arraignment, it provided defense counsel with a complete copy of the file to satisfy anticipated discovery motions. Because defense counsel had a complete copy of the State's file, there was no need for defense counsel to file discovery motions.

The State additionally asserts that in January 2010, five months prior to trial, it sought a buccal sample from the Defendant so his DNA could be compared with DNA found at the crime scene. The State contends that on January 25, 2010, Detective Keith Fennell obtained a DNA buccal swab from the Defendant. At that time, the Defendant stated, "I did it, I want to get it over with."

The State contends the Defendant neglected to inform this court that, although the State did file an Article 768 notice, it did not introduce the statement made by the Defendant on January 25, 2010. Additionally, when the Defendant testified, he was not asked about the statement.

2

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the Defendant contends the trial court erred by allowing the State to file a La. Code Crim.P. art. 768 notice which alleged he stated "I did it and I want to get it over with."

Louisiana Code of Criminal Procedure Article 768 states:

> Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.

The State filed its Article 768 notice prior to giving its opening statement on May 19, 2010. Defense counsel objected, stating the notice was untimely filed because the Defendant's statement was made on January 25, 2010.

The notice was filed in accordance with La.Code Crim.P. art. 768. Accordingly, the Defendant's first assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends defense counsel was ineffective, as the Defendant filed a pro se motion for discovery and inspection requesting any statements made by him, but was not provided the statement allegedly made by him to Detective Keith Fennel at the time his DNA was taken.

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

*State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701.

> This court has held that ineffective assistance of counsel claims must meet two separate criteria in order to have merit:
>
> > The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment of the U.S. Constitution. In order to prove that counsel was ineffective, the defendant must meet the two-pronged test enunciated by the Supreme Court. First, the defendant must show that counsel's performance was deficient. Second, the defendant must

3

show that this deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his defense attorney failed to meet the level of competency normally demanded of attorneys in criminal cases.

In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result.

It is not enough for an accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice. A claim of ineffective assistance of counsel may be disposed of based upon a failure to satisfy either criteria of the established two-pronged test; if the accused's claim fails to satisfy one, the reviewing court need not address the other. A brief review of the defendant's complaints against his attorneys will demonstrate the deficiency of his arguments.

*State v. James*, 95-962, pp. 4-5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465 (citations omitted). Moreover, "[i]t is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different." *State v. Jones*, 33,657, p. 11 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, 1199, *writ denied*, 00-2779 (La.6/29/01), 794 So.2d 825.

*State v. Beaudion*, 09-440, pp. 15-16 (La.App. 3 Cir. 12/23/09), 27 So.3d 342, 352-53(alteration in original).

The State gave a copy of its file to defense counsel on July 10, 2009. The Defendant filed pro se motions for discovery on June 9, 2009, and September 22, 2009, and both motions were denied. The statement at issue was made by the Defendant on January 25, 2010.

The record before this court is sufficient to review this assigned error. However, "[t]o prove an allegation of ineffectiveness, Defendant must specifically show prejudice." *State v. Doucet*, 09-1065, p. 7 (La.App. 3 Cir. 5/5/10), 36 So.3d

1105, 1111, *writ denied*, 10-1195 (La. 12/17/10), 51 So.3d 19. The Defendant fails to allege and make a showing of specific prejudice regarding the State's failure to provide him with the statement he made to Detective Fennel. Accordingly, the Defendant's second assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the Defendant contends he was denied effective assistance, as defense counsel should have moved for a continuance when the trial court allowed the filing of the Article 768 notice. Further, the Defendant claims the admission of the inculpatory statement deprived him of his right not to take the stand because he had to testify to "explain away the statement."

There is no indication in the record that the statement at issue was introduced at trial or that the Defendant was questioned about the statement. Furthermore, the Defendant fails to point to pages in the record to support his claim as required by Uniform Rules—Courts of Appeal, Rule 2-12.4. Where such reference is not made, this court may disregard the arguments made in connection with the assigned error.

The record before this court is sufficient to review this assigned error. However, the Defendant fails to allege and make a showing of specific prejudice regarding defense counsel's failure to move for a continuance and his right not to testify. Accordingly, we find the Defendant's third assignment of error lacks merit.

### ASSIGNMENTS OF ERROR NUMBERS FOUR AND THIRTY NINE

In his fourth assignment of error, the Defendant contends he was denied the right to effective assistance of counsel, as defense counsel did not request a jury instruction on self-defense.

In his thirty-ninth assignment of error, the Defendant contends he was denied effective assistance of counsel and due process when defense counsel failed to argue self-defense without his permission.

The Defendant contends the evidence clearly required an instruction regarding self-defense and defense counsel and the trial court failed to give one. He contends that if defense counsel had met with him, defense counsel would have known self-defense applied. The Defendant also contends that defense counsel did not investigate a claim of self-defense, discuss the facts of the case with him, or request a jury instruction on self-defense when it was staring him in the face. He further contends that defense counsel had no strategic reason to explain his failure to request the jury instruction at issue. The Defendant asserts that defense counsel did not question him regarding self-defense even when he testified that Jones must have mistaken him for an intruder and attacked him with a knife.

The State asserts defense counsel questioned prospective jurors about aggravated battery and, in his opening statement, said the following: "What I think that the evidence is gonna prove, is that my client is guilty of an Aggravated Battery." The State contends the Defendant's testimony was unbelievable and perjured. The State asserts that had trial counsel argued self-defense, he would have lost all credibility with the jury and committed an ethical violation. The State contends defense counsel's conduct was a strategic move.

Ruby Jones testified that she heard a noise in her home at approximately 5:30 a.m. and eventually exited her bedroom to find the Defendant walking toward here with a butcher knife. He then stabbed her several times and beat her while saying: "'Bitch, I'mma [sic] kill you, I'mma [sic] kill you.'"

The Defendant testified that the door to the residence was left open for him by Jones's daughter, whom he was dating. He further testified that Jones approached him with a knife because she thought he was breaking into her home. The Defendant stated he tried to stop Jones from cutting him, and they wrestled and struggled over the knife. Jones was overpowering him, so he hit her with his fists. The Defendant stated the wound to Jones's neck occurred when: "I grabbed her hand, and when I

6

punched 'er [sic], I was punchin' [sic] 'er [sic] with the hand that had, ah the hand with the knife in her hand. When I punched 'er [sic] it hit 'er [sic] neck too at the same time."

Anlanette Jones testified that she did not give the Defendant a key to her mother's residence, did not tell him he could come into the house on the morning in question, did not let him in, and did not leave the door open for him.

The record before this court is sufficient to review assignments of error four and thirty-nine. The Defendant makes general claims that he did not receive a fair trial. However, he fails to make a showing of specific prejudice regarding defense counsel's failure to argue self-defense and to seek a jury instruction regarding same. Accordingly, the Defendant's fourth and thirty-ninth assignments of error lack merit.

### ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth assignment of error, the Defendant contends the trial court erred in failing to instruct the jury on self-defense when the evidence clearly required the instruction be given to the jury.

> La.Code Crim.P. art. 802(1) requires the court to instruct the jury as to the law applicable to the case. When properly requested to do so, the court is obligated to charge the jury as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. *State v. Jackson*, 450 So.2d 621 (La.1984); *State v. Campbell*, 94-1140 (La.App. 3 Cir. 3/13/96); 673 So.2d 1061, *writ denied*, 96-1785 (La.1/10/97); 685 So.2d 140, *cert. granted*, [521] U.S. [1151], 118 S.Ct. 29, 138 L.Ed.2d 1059 (1997).

*State v. Hardy*, 97-1248, p. 11 (La.App. 3 Cir. 3/6/98), 711 So.2d 715, 720, *writ denied*, 98-927 (La. 9/4/98), 723 So.2d 954.

Defense counsel did not request an instruction regarding self-defense. Thus, the trial court did not err in failing to give such an instruction to the jury. Accordingly, the Defendant's fifth assignment of error lacks merit.

7

## ASSIGNMENT OF ERROR NUMBER SIX

In his sixth assignment of error, the Defendant contends that defense counsel was ineffective because, in his opening statement, he admitted the Defendant was guilty of aggravated battery and did not explore the plausible defense of self-defense.

During opening statements, defense counsel stated:

Gonna [sic] make is [sic] easy for you, it's gonna [sic] be real easy. My client, the Defendant, is the cause of the injuries to the victim. Real simple. I said it exactly as I meant to say it. My client is responsible for the injuries to the victim. Simple enough. But, what is the evidence gonna [sic] show of what crime was committed? I don't believe that the evidence is going to show that there was an attempted murder committed. There are those other two charges . . . Unauthorized Entry. I don't believe that it's going to prove that my client was guilty of unauthorized inju [sic], unauthorized entry. Theft of a car, I'll make that one simple too. My client left in the car. Let's make it simple. But the point is, what is he guilty of? That's gonna [sic] be the question that y'all are gonna [sic] have to answer.

. . . What I think that the evidence is gonna [sic] prove, is that my client is guilty of an [a]ggravated [b]attery. Now, you've been explained the elements of the crime. Mr. Shannon has taken the responsibility of proving beyond a reasonable doubt those elements. If he doesn't prove it beyond a reasonable doubt, you just . . . that you will vote the appropriate way.

The Defendant makes general claims that he did not receive a fair trial. However, he fails to make a showing of specific prejudice regarding defense counsel's statement that the Defendant committed aggravated battery. Accordingly, the Defendant's sixth assignment of error lack merit.

## ASSIGNMENT OF ERROR NUMBER THIRTY-EIGHT

In his thirty-eighth assignment of error, the Defendant contends he was denied effective assistance of counsel and due process when the State argued on three occasions, "You may infer that the Defendant intended the natural and probable consequences of his actions," and counsel failed to object in closing arguments.

During its closing argument, the State told the jury the following(emphasis added):

And the Judge is gonna [sic] tell you: "Whether criminal intent is present must be determined in light of what may be of ordinary experience. Intent is a question of fact which may be inferred from the circumstances and can be formed in an instant. **You may infer that the Defendant intended the natural and probable consequences of his actions.**" Now that's a simple way of saying . . . for instance, for example, if I take a gun and I load it, and I point it at somebody and I fire it, and I'm a poor shot and I miss you, it's still attempted second degree murder. 'Cause [sic] defendant's intent to kill is inferred from the circumstances, it's inferred from his actions, in picking up a gun, pointing, and firing. If the bullet strikes, death may result. That is a natural and probable consequence of that act, and you intend the natural and probable consequences of your actions. Likewise, if you armed yourself with a knife and you stab another in the chest, in the back, throat with nothing more, nothing more, his intent to kill is inferred from his actions. A natural and probable consequence of stabbing someone in the chest, in the back or in the throat, is death. You intend the natural and probable consequences of your actions. And that's his intent at the time of the act. And that intent can be formed that quickly, just (snaps fingers) that fast. You don't have to think about it a day, an hour; it's formed that quickly. But you, you don't have to infer his intent, because Ms. Ruby testified that while he's doing this, he is saying: "I am going to kill you, you bitch". You don't have to infer a thing. He has stated his intent. And remember the Attempt Statute: "It is immaterial whether under the circumstances he would have actually accomplished his purpose". The intent is what is important. The fact that the blade did not pierce the heart makes no difference, his intent is what is important.

Defense counsel did not object to the State's comments.

The Defendant contends the State persistently argued "this jury instruction" with the knowledge that the trial court would give this instruction "to the point of causing an impermissible presumption or shifting of the burden of proof to the Defendant." He asserts defense counsel had no reason or strategy for failing to object to this instruction and to correct the State's impermissible argument.

The State asserts this argument was proper.

The Defendant makes general claims that he did not receive a fair trial. However, he fails to make a showing of specific prejudice regarding the State's remarks. Accordingly, the Defendant's thirty-eighth assignment of error lack merit.

## ASSIGNMENT OF ERROR NUMBER FORTY

In his fortieth assignment of error, the Defendant contends he was denied effective assistance of counsel and due process when defense counsel failed to object to the State's argument that, "He (Defendant) doesn't deserve your consideration."

During its closing argument, the State made the following remarks(emphasis added):

> Responsive verdicts. Defendant dun't [sic] deserve that break. Attempted . . . and I'm not even gonna [sic] talk about the other stuff. Attempted Second Degree Murder or Attempted Manslaughter or Attempted Aggravated Battery. What break did he, he give Ruby? He was going over there against her will, he armed himself, he invaded the home of a woman and her daughter with no one there to protect 'em [sic]. And he wants to tell us it's self-defense. **He doesn't deserve your consideration.** We have proved beyond a reasonable doubt that he is guilty of Attempted Second Degree Murder.

Defense counsel did not lodge an objection.

The Defendant makes general claims that he did not receive a fair trial. However, he fails to make a showing of specific prejudice regarding the State's remarks. Accordingly, the Defendant's fortieth assignment of error lack merit.

## ASSIGNMENT OF ERROR NUMBER FORTY-ONE

When instructing the jury, the trial court stated: "you may infer that the Defendant intended the natural and probably consequences of his actions." The Defendant contends this instruction was improper.

Defense counsel did not object to this instruction; thus, the Defendant failed to properly preserve the issue asserted in assignment of error number forty-one for review. La.Code Crim.P. art. 841. Accordingly, this issue is not considered by this court.

The Defendant asserts defense counsel was ineffective for failing to object to this instruction. The Defendant makes general claims that he did not receive a fair

trial. However, he fails to make a showing of specific prejudice regarding the jury instructions. Accordingly, this issue lacks merit.

## ASSIGNMENT OF ERROR NUMBERS SEVEN AND EIGHT

In his seventh assignment of error, the Defendant contends the trial court erred in allowing into evidence hearsay evidence of the 911 emergency call.

In his eighth assignment of error, the Defendant contends defense counsel was ineffective in failing to object to the 911 tape being allowed into evidence when it contained hearsay evidence and no foundation was established or laid for its introduction into evidence.

The Defendant admits that 911 tapes are normally admissible. However, they are not admissible when they contain hearsay evidence and deprive a defendant of the right of confrontation. The Defendant "contends he was deprived of his right of confrontation by allowing Ruby Jones, and other persons on the phones or tape." The Defendant notes that Sonya Wiley Gremillion testified as to the authenticity of the tape, but he was not given the opportunity to cross-examine and confront the callers on the tape. As an example, the Defendant sates that an "unidentified deputy got on the phone . . . and no one can verify the validity of the statements of the 911 callers or the truthfulness of the statements therein." He then asserts he was unable to cross all the witnesses to the 911 tape.

The Defendant is aware that defense counsel did not object to the admissibility of the 911 tape and alleges that defense counsel was ineffective for failing to do so. He then sets forth cases involving chain of custody and states:

> In light of the law, trial counsel did not cross at all on the foundation in order to keep out the admission of the 911 [t]ape. Further, he did not bring out the areas of [h]earsay contained therein which would have prohibited its admission on constitutional grounds of confrontation, cross examination and violation of [d]ue [p]rocess of [l]aw since the 911 [t]ape required both testimonial and demonstrative foundations be established.

11

The 911 tape was played for the jury, and its content is contained in the transcript found in the record. The Defendant fails to point out which portions of the 911 tape constitute hearsay and name the persons he could not confront or cross-examine regarding the tape and its content. Furthermore, the Defendant fails to allege and make a showing of specific prejudice regarding defense counsel's failure to object to the admission of the 911 tape. Accordingly, the Defendant's eighth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER NINE

In his ninth assignment of error, the Defendant contends the trial court erred in allowing hearsay evidence from Deputy Chad Robinson as to the Defendant taking the keys to Jones's Nissan Frontier.

There was no objection to Deputy Robinson's testimony at trial. Thus, the Defendant failed to properly preserve the issue asserted in assignment of error number nine for review. La.Code Crim.P. art. 841. Accordingly, we do not consider this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TEN

In his tenth assignment of error, the Defendant contends defense counsel was ineffective for failing to object to hearsay testimony that he took the victim's keys.

Deputy Chad Robinson was questioned as follows:

Q.  You know at . . . later on in the day, do you know that, ah . . . did you obtain any information as to Ms. Ruby's vehicle?

A.  Ahm, Ms. Ruby stated that she had a red Nissan Frontier, and that he took the keys to it and left the residence.

The Defendant notes that defense counsel failed to object to this testimony. He then contends the testimony constituted double hearsay and was "outside of Ruby Jones['s] personal knowledge."

12

In addition to Deputy Robinson's testimony, Jones and her daughter both testified that the Defendant took the keys to Jones's vehicle and drove away. Further, on the 911 tape, Jones stated the offender left in her vehicle.

The Defendant fails to allege and make a showing of specific prejudice regarding defense counsel's failure to object to Deputy Robinson's testimony. Accordingly, the Defendant's tenth assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBERS THIRTEEN AND FOURTEEN

In his thirteenth assignment of error, the Defendant contends defense counsel was ineffective for failing to object to hearsay testimony from Detective Kenneth Abate regarding the Defendant's whereabouts.

In his fourteenth assignment of error, the Defendant contends defense counsel was ineffective for failing to object when he knew the subject of the Defendant's whereabouts was hearsay.

The Defendant contends Detective Abate could not verify whether the information concerning his whereabouts was obtained from Ruby Jones, Anlanette Jones, or the radio dispatcher.

At trial, Detective Abate was questioned as follows:

Q. Did you obtain any information where he may be?

A. From the victim, yes sir. And I was told that he was gonna [sic] be at, ah, 2122 Monroe Street.

Detective Abate later testified that he was not sure from whom he obtained the address.

In addition to Detective Abate's testimony, Jones's daughter told the 911 dispatcher that the offender was the Defendant and where he resided.

Defendant fails to allege and make a showing of specific prejudice regarding defense counsel's failure to object to Detective Abate's testimony. Accordingly, the Defendant's thirteenth and fourteenth assignments of error lack merit.

13

**ASSIGNMENT OF ERROR NUMBERS ELEVEN AND FIFTEEN**

In his eleventh assignment of error, the Defendant contends the trial court erred in admitting into evidence S-2 without a proper foundation.

In his fifteenth assignment of error, the Defendant contends the trial court erred in admitting into evidence exhibits S-2 through S-8 when Deputy Fennell did not arrive at the alleged crime scene until 7:15 a.m.

When the State offered S-2, a photograph of Jones; S-3, a photograph of a laceration to her left shoulder; S-4, a photograph of a laceration to her upper chest; S-5, a photograph of a laceration; S-6, a photograph of a laceration to her upper back or shoulder area; S-7, a photograph of two lacerations to her throat; and S-8, a photograph of Jones's mouth, defense counsel stated he had no objection. As defense counsel failed to lodge an objection to the introduction of these exhibits, the Defendant failed to properly preserve the issues asserted in assignments of error number eleven and fifteen for review. La.Code Crim.P. art. 841.

**ASSIGNMENT OF ERROR NUMBERS TWELVE AND SIXTEEN**

In his twelfth assignment of error, the Defendant contends he was denied effective assistance of counsel where defense counsel failed to make the State lay a proper foundation as to date, time, place, and accuracy for the introduction of S-2, S-3, S-4, S-5, S-7, and S-8 into evidence.

In his sixteenth assignment of error, the Defendant contends he was denied effective assistance of counsel because counsel failed to object to the introduction of S-2 through S-8 when no foundation was established for their admission "and crime scene did not arrive until 7:15 a.m."

In assignments of error twelve and sixteen, the Defendant contends defense counsel was ineffective for failing to object to the introduction of S-2 through S-8, when no foundation for their admission was established, and Deputy Fennell did not

14

arrive at the crime scene until three hours after the offense was committed. The Defendant further contends the photographs were taken hours after the crime scene was altered or tainted and no one except the Victim could testify concerning the facts to lay a proper foundation for their admission.

The Victim, Jones, agreed that the events at issue herein occurred at about 5:30 a.m. The call to 911 was received at 6:10 a.m. Furthermore, Deputy Abate testified that the photographs, which depicted injuries suffered by Jones, were taken by him at Jones's residence at approximately 6:13 a.m. on March 8, 2009. The photographs at issue were not taken by Deputy Fennell as asserted by the Defendant in brief to this court.

The Defendant fails to allege and make a showing of specific prejudice regarding the admissibility of S-2 through S-8. Accordingly, the Defendant's twelfth and sixteenth assignments of error lack merit.

### ASSIGNMENT OF ERROR NUMBER SEVENTEEN

In his seventeenth assignment of error, the Defendant contends he was denied effective assistance of counsel because defense counsel failed to object to S-10 and S-11. S-10 is a photograph of Jones's kitchen, and S-11 is a photograph of a suspected blood smear on a tile floor.

Deputy Fennell testified that he arrived at Jones's residence at 7:15 a.m. and took photographs between 8:00 and 9:00 a.m. He also identified what was depicted in the photographs.

However, the Defendant fails to allege and make a showing of specific prejudice regarding the admissibility of S-10 and S-11. Accordingly, the Defendant's seventeenth assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWENTY

In his twentieth assignment of error, the Defendant contends the trial court erred in admitting S-9 through S-17 on grounds of failure to lay a proper foundation,

15

particularly where there was no testimony as to the condition of the "windows house" prior to the alleged crimes, but only the condition three hours after the incident.

S-9 was a knife found inside the residence, S-10 is a photograph of Jones's kitchen, and S-11 is a photograph of a suspected blood smear on a tile floor. At the time these exhibits were introduced by the State, defense counsel failed to object to their admission. As defense counsel failed to object to the admission of S-9, S-10, and S-11, the Defendant failed to properly preserve the issue of their admissibility for review. La.Code Crim.P. art. 841.

Defense counsel objected after the State offered S-12, a photograph of a suspected blood stain on carpet, stating the following: "I'm gonna [sic] make an objection, ah, based on my cross-examination of the witness that I might . . . the condition of the windows and when exactly he took 'em [sic], and where [sic] they in exactly that condition." S-12 was not covered by the objection, as it was not a photograph of windows. Thus, defense counsel did not lodge an objection covering S-12. Accordingly, the Defendant failed to properly preserve the issue of the admissibility of S-12 for review. La.Code Crim.P. art. 841.

When S-13, a photograph of a box fan with suspected blood on it, was introduced, defense counsel stated he had no objection. Defense counsel did not object to the admissibility of S-14, a photograph of the side of a heater, and S-15, a photograph of a door, either. As defense counsel failed to lodge an objection to the introduction of S-13, S-14, and S-15, the Defendant failed to properly preserve the issue of their admissibility for review. La.Code Crim.P. art. 841.

Defense counsel did object to the admission of S-16, a photograph of a window on the back of Jones's house, and S-17, a close up of the windows depicted in S-16. The Defendant contends the trial court erred in admitting these exhibits because a proper foundation for their admission was not established.

16

> Generally, photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, subject to the test that their probative value outweighs any prejudicial effect. The proper foundation for the admission of a photograph into evidence is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it as such. It is well settled that a photograph need not be identified by the person who took it to be admissible.

*State v. Lanieux*, 09-675, pp. 5-6 (La.App. 5 Cir. 3/9/10), 39 So.3d 606, 609 (footnotes omitted).

Deputy Fennell testified that he arrived at Jones's residence at 7:15 a.m. and took the photographs between 8:00 and 9:00 a.m. He also identified what was depicted in the photographs. Accordingly, a proper foundation was laid for the admissibility of S-16 and S-17.

### ASSIGNMENT OF ERROR NUMBER THIRTY-FOUR

In his thirty-fourth assignment of error, the Defendant contends the trial court erred in admitting Ruby Jones's medical records without a proper foundation when neither the State nor the defense pointed out the superficial injuries suffered by Jones as a result of the alleged crime. At the time Jones's medical records were introduced by the State, defense counsel objected, stating: "I'm going to object to the introduction of the medical records. Not until you've qualified 'em [sic] with the person that's here. I'mma [sic] object to the admission of those records." The trial court overruled the objection.

The Defendant notes that defense counsel did not point out the nature of Jones's wounds or whether they could have been self-inflicted by Jones, who attempted to attack an intruder not realizing it was him who had just entered her home. Further, the State stayed away from explaining the injuries "from the medical records" as well.

The State contends any error in the admission of the medical records was harmless, as it was not disputed that Jones went to the hospital, and she testified about her injuries.

Defense counsel did not object to the introduction of the medical records on the basis that Jones's injuries were not pointed out by anyone. A new basis for an objection may not be raised for the first time on appeal. La.Code Crim.P. art. 841. Accordingly, we do not consider this assignment of error.

## ASSIGNMENT OF ERROR NUMBERS TWENTY-SIX AND THIRTY

In his twenty-sixth and thirtieth assignments of error, the Defendant contends he was denied the right to effective assistance of counsel when counsel failed to object on grounds of relevance to the admission of Ruby Jones's testimony as to why she lost her house.

Ruby Jones testified that she had worked at Piccadilly but did not return to work there after she broke her wrist on November 11, 2008. She subsequently testified that she lost her home because she had no income from March through October of 2009 because the doctor determined she was totally disabled. Defense counsel did not object to this testimony.

Defendant fails to allege and make a showing of specific prejudice regarding the relevancy of Jones's testimony regarding her home. Accordingly, the Defendant's twenty-sixth and thirtieth assignments of error lack merit.

## ASSIGNMENT OF ERROR NUMBER TWENTY-SEVEN

In his twenty-seventh assignment of error, the Defendant contends his right to effective assistance of counsel was denied when defense counsel failed to object to leading the witness.

Specifically, Defendant cites the testimony of Ruby Jones. The Defendant fails to allege and make a showing of specific prejudice regarding leading questions directed to Ruby Jones. Accordingly, the Defendant's twenty-seventh assignment of error lacks merit.

18

## ASSIGNMENT OF ERROR NUMBER TWENTY-EIGHT

In his twenty-eighth assignment of error, the Defendant contends the trial court erred in overruling defense counsel's objection to leading.

The Defendant contends the trial court erred in denying the objection to leading questions during Ruby Jones's testimony. The Defendant cites record pages 132 and 133 in his brief to this court. On page 132, the following occurred:

Q.      During the early morning of March 8, 2009, about 5:30 or so, did anything wake you up from your sleep?

A.      Yes. I heard a noise and I thought it was my daughter, and I called out her name. She, I didn't get a answer, so I, I got up out the bed and I called her name again. And as I was walking to my, outta my bedroom door, J. R. was coming towards me.

Q.      Who's J. R.?

A.      Ah, Garry.

Q.      Why do y'all . . . y'all call 'im [sic] (interrupted)

A.      They called 'im [sic], yeah, that was his nickname.

Q.      All right.

A.      And the first thing I see was the butcher knife.

Q.      Where did you see it, Ms. Jones?

A.      It was in his hand. He stabbed me here first, my left (interrupted)

Q.      In your left, left (interrupted)

A.      . . . shoulder, right here.

Q.      . . . chest, shoulder.

A.      Chest shoulder. And he beat me down to the floor, and he stabbed me four times in my back shoulder. (Sobs)

Q.      Did he say anything while he was doing this?

A.      He kept saying: "Bitch, I'mma [sic] kill you, I'mma [sic] kill you". And I was screamin' [sic], he kicked me in my side several times, and he left out the room, and I was steady screamin' [sic] and callin' [sic] on the Lord.

19

Q. Before he left out of the room, did he cut you anywhere else? Did he get you on the floor on your stomach?

A. I was on my stomach.

Q. Did you, were you fightin' [sic] at that point?

BY MR. WILLIAMS: Ah, Your Honor, I'm going to object to the leading.

BY THE COURT: Overruled.

> Generally, a leading question should not be used in the examination of a witness. LSA-C.E. art. 611(C). A leading question is one that suggests the answer the witness is expected to give. *State v. Lynch*, 94-0543 (La.App. 1st Cir.5/5/95), 655 So.2d 470, *writ denied*, 95-1441 (La.11/13/95), 662 So.2d 466. The use of leading questions is largely within the discretion of the trial judge, and only a clear abuse of discretion which prejudices the defendant's rights will justify reversal of a conviction. *Lynch*, 655 So.2d at 476.

*State v. Odom*, 03-1772, pp. 12-13 (La.App. 1 Cir. 4/2/04), 878 So.2d 582, 592, *writ denied*, 04-1105 (La. 10/8/04), 883 So.2d 1026.

"Questions calling for yes or no answers do not constitute impermissible leading questions where the questions do not suggest the answer that the witness is expected to give." *State v. Moore*, 38,444, p. 20 (La.App. 2 Cir. 6/23/04), 877 So.2d 1027, 1040, *writ denied*, 04-2316 (La. 2/4/05), 893 So.2d 83.

The Defendant fails to point out any questions that were leading. The question asked by the State immediately before defense counsel objected was not a leading question. Nevertheless, even if some of the questions the State asked Jones were inappropriately leading, nothing in the Defendant's brief indicates how those questions were the type of prosecutorial misconduct which diminishes the reliability of the jury's verdict. Further, there is no indication that the questioning led Jones to acquiesce to any false suggestions. *See Moore*, *Id.* Accordingly, the Defendant's twenty-eighth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWENTY-NINE

In his twenty-ninth assignment of error, the Defendant contends he was denied the right to effective assistance of counsel when defense counsel failed to object to Ruby Jones's narrative testimony.

The Defendant references record page 133, which contains Ruby Jones's testimony. He contends it was a narration and should have been challenged by defense counsel. The State contends defense counsel did not object to this testimony.

The Defendant fails to allege and make a showing of specific prejudice regarding Jones's testimony. Accordingly, the Defendant's twenty-ninth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER THIRTY-ONE

In his thirty-first assignment of error, the Defendant contends he was denied the right to effective assistance of counsel when defense counsel failed to object to leading the witness, Anlanette Jones.

The Defendant contends the State was putting words into the mouths of its witnesses, and defense counsel did not object. Later, when counsel objected, the trial court erred in overruling defense counsel's objection to leading.

The Defendant contends Ruby Jones's testimony as to why she lost her home was irrelevant. He asserts the State was making a play for sympathy, which is prohibited, and emotion, passion, and sympathy should not be the basis of a verdict.

The State asserts there was no showing that any witness acquiesced to a false suggestion. Further, defense counsel did not object to Jones's narration.

Anlanette Jones was questioned as follows:

Q.     You didn't listen to your Mama?

A.     No sir.

Q.     Did you tell Garry McClinton that your Mama didn't want 'im [sic] at your house?

21

A.    Yes sir.

She was further questioned as follows:

Q.    In fact, you had told 'im [sic] before he was not welcome in that house.

A.    Yes sir.

Defense counsel did not object to this testimony, and the Defendant contends he was ineffective for failing to do so.

The Defendant fails to allege and make a showing of specific prejudice regarding the questioning of Anlanette. Accordingly, the Defendant's thirty-first assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBERS THIRTY-TWO AND THIRTY-THREE

In his thirty-second assignment of error, the Defendant contends his right to effective assistance of counsel was denied when defense counsel failed to object to the admission of speculation as to what Anlanette thought was going to happen to her mother.

In his thirty-third assignment of error, the Defendant contends his right to effective assistance of counsel was denied when defense counsel failed to object to the admission of the State's speculative question on direct, "How do you (Anlanette) feel now that, that you didn't listen to your Mama?"

Anlanette Jones was questioned by the State as follows:

Q.    What'd [sic] you think was gonna [sic] happen to your Mama that night when, when you got on the 911 call?

A.    I thought she was gonna [sic] die.

. . . .

Q.    How do you feel now that, that you didn't listen to your Mama?

A.    That I should have.

Defense counsel did not object to this testimony.

22

The Defendant contends this line of questioning was completely irrelevant and had no probative value. The State asserts the questions were proper and, if improper, were harmless.

The Defendant fails to allege and make a showing of specific prejudice regarding the line of questioning at issue. Accordingly, the Defendant's thirty-second and thirty-third assignments of error lacks merit.

## ASSIGNMENTS OF ERROR NUMBERS THIRTY-SEVEN AND FORTY-FOUR

In his thirty-seventh and forty-second assignments of error, the Defendant contends defense counsel was ineffective because he failed to object to improper argument by the State that "I don't know if he had a key that he had from his previous time there . . . It doesn't matter that Anlanette let him(Defendant) in when Ruby was gone. . . . At that time, his entry was unauthorized."

The Defendant notes the State had charged him with unauthorized entry of an inhabited dwelling and, if he was let in, given a key, or invited in by someone in the house, his entry was authorized.

The Defendant fails to allege and make a showing of specific prejudice. Furthermore, the Defendant cannot prove he was prejudiced by these remarks, as the jury found him not guilty of unauthorized entry of an inhabited dwelling. Accordingly, the Defendant's thirty-seventh and forty-second assignments of error lack merit.

## ASSIGNMENTS OF ERROR NUMBERS FORTY-THREE AND FORTY-FOUR

In his forty-third assignment of error, the Defendant contends the trial court erred "where he abused his discretion and the alleged crimes, without question were performed at the same time, by the same act or transaction and were, if defendant is culpable, part of a common plan or scheme where concurrent sentencing is preferred

unless expressly directed by the trial court." In his forty-fourth assignment of error, the Defendant contends the trial court erred in sentencing him, a first felony offender, to two ten year, hard labor sentences, to run consecutively.

The Defendant quotes the trial court's discussion of La.Code Crim.P. art. 883, notes the trial court ordered his sentences to be served consecutively, and asserts the Eighth Amendment prohibits the imposition of cruel and unusual punishment. He then asserts the twenty-year sentence served at eighty-five percent with good time is excessive and constitutes the needless and purposeless imposition of pain and suffering. Further, Defendant contends his sentences should run concurrently

In his motion to reconsider sentence, the Defendant set forth arguments similar to those made in brief to this court and cited the same case law. In that motion, he merely asked the trial court to resentence him and order his sentences to run concurrently. Thus, the Defendant is asserting, in brief to this court, his sentences are excessive because they were ordered to run consecutively.

The Defendant was convicted of aggravated battery, which is punishable by a fine of not more than five thousand dollars, imprisonment with or without hard labor for not more than ten years, or both. La.R.S. 14:34. The Defendant was also convicted of unauthorized use of a motor vehicle, which is punishable by a fine of not more than five thousand dollars, or imprisonment with or without hard labor for not more than ten years, or both. La.R.S. 14:68.4. The Defendant was sentenced to serve ten years at hard labor for each offense, and the sentences were ordered to run consecutively.

> In *State v. Hawkins*, 06-1599, pp. 1-2 (La.App. 3 Cir. 5/2/07), 956 So.2d 146, 148-49, *writ denied*, 07-1156 (La.12/7/07), 969 So.2d 627, this court discussed the appropriateness of ordering consecutive sentences as follows:
>
>> Louisiana Code of Criminal Procedure Article 883 states, in pertinent part, "If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of

24

imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." As noted by this court in *State v. Vollm*, 04-837, p. 6 (La.App. 3 Cir. 11/10/04), 887 So.2d 664, 669, "The Louisiana Supreme Court has recognized that although concurrent sentencing is favored, it is within the trial judge's discretion to impose sentences consecutively based on factors including the defendant's criminal record, the severity or violent nature of the crimes, or the danger the defendant poses to the public. *State v. Thomas*, 98-1144 (La.10/9/98), 719 So.2d 49." *See also State v. Walker*, 00-3200 (La.10/12/01), 799 So.2d 461.

The court in *Hawkins* also addressed the factors to be considered in ordering consecutive sentences. First, the court noted that the imposition of consecutive sentences requires particular justification which must be articulated beyond the standard factors considered in the sentencing guidelines set forth in La.Code Crim.P. art. 894.1. Next, the court observed a host of factors identified by various courts across the state to be considered in making such a determination. These factors were compiled by the second circuit in *State v. Coleman*, 32,906, p. 42 (La.App. 2 Cir. 4/5/00), 756 So.2d 1218, 1247-48, *writ denied*, 00-1572 (La.3/23/01), 787 So.2d 1010 (citations omitted), as follows:

> [T]he defendant's criminal history; the gravity or dangerousness of the offense; the viciousness of the crimes; the harm done to the victims; whether the defendant constitutes an unusual risk of danger to the public; the defendant's apparent disregard for the property of others; the potential for the defendant's rehabilitation; and whether the defendant has received a benefit from a plea bargain.

*State v. Shepherd*, 08-1556, pp. 3-4 (La.App. 3 Cir. 6/3/09), 11 So.3d 729, 731-329(alteration in original).

When ordering the Defendant's sentences in the case at bar to be served consecutively, the trial court stated:

> Pursuant to *Louisiana Code of Criminal Procedure* Article 883: "If a defendant is convicted of two or more offenses based upon the same act or transaction or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of a concurrent sentence the judge shall specify and the court minutes shall reflect the day from which the sentences are to run concurrent. Louisiana courts have adhered to the general rule that concurrent sentences are preferred for crimes that arise out of a single

25

course of criminal conduct. This rule will normally apply to a defendant without a previous criminal record and in the absence of a showing that public safety requires a harsher sentence. However consecutive sentences are not necessarily exsex [sic], excessive when prescribed for convictions arising out of a single course of conduct. The judge court has wide discretion in sentencing a defendant and that discretion is not abused when part of the sentence is to be concurrent but another sentence or part of the other remainder is to run consecutively or it's run consecutively under Louisiana law." (As Read)

Under Article 883 and the general rule followed by Louisiana courts in order to impose consecutive sentences there are certain factors that have to be considered. Ah, one would be the Defendant's criminal history. In this case the Defendant's criminal history is not as extensive as many of the, ah, situations we deal with. I note for the record that there were, according to the information I have available to me, there were, ah, fifteen bookings. But I, I do not note any previous felony convictions.

Another factor is the gravity or dangerousness of the offense. As discussed before, this is an absolutely brutal crime that completely destroyed an older lady in our community. It damaged her both (sic) physically, emotionally and financially. Another factor is the viciousness of the crime. I heard Mrs. Jones's test, Ms. Jones's testimony that she was stabbed repeatedly and her throat was cut, ah, the description of her attack was absolutely horrifying. The harm done to the victim: It goes without saying in this case Ms. Jones's life has been destroyed as a result of this crime. Whether the Defendant constitutes an unusual risk of danger to the public. While I respect the opinion of his family that he has been a good young man, I have to judge on history, and clearly he's demonstrated a propensity for violence. Another factor is the Defendant's apparent disregard for the property of others. Ah, he stabbed and cut Ms. Jones, cut her throat and then took her vehicle in disregard for her rights in that property.

Another is the potential of the Defendant for rehabilitation. That's hard to assess in this case due to the vicious nature of the attack. I am troubled because the Defendant keeps referring to this vicious stabbing and throat cutting as a misunderstanding. Ah, certainly this is was a brutal crime of violence that could've, that certainly could have killed Mrs. Jones, Ms. Jones. The Defendant has not acknowledged the vicious nature of the attack.

In *Shepherd*, the defendant entered the home of the "60-some-year-old" victim. *Id* at 731. While in the victim's home, the defendant armed himself with the victim's pistol and shot the victim in the chest. The defendant then fled from the victim's home with the victim's pistol and wallet. He pled guilty to aggravated battery, armed robbery, and possession of a firearm by a convicted felon. He was sentenced to twenty-two years at hard labor without benefits for armed robbery and ten years at

hard labor without benefits for possession of a firearm. The sentences were ordered to run concurrently. For aggravated battery, the defendant was sentenced to serve eight years without benefits, to run consecutively to the other two sentences. On appeal, the defendant argued the trial court erred in ordering his sentence for aggravated battery to be served consecutively, thereby resulting in an excessive sentence.

When addressing the defendant's claim in *Shepherd*, this court discussed several cases involving consecutive sentences, stating:

> There are several cases in the jurisprudence wherein consecutive sentences were ordered for offenses arising out of a common scheme or plan. In *State v. Leyva-Martinez*, 07-1255 (La.App. 3 Cir. 4/30/08), 981 So.2d 276, *writ denied*, 08-1200 (La.1/30/09), 999 So.2d 747, the defendant raped a woman and then stole her vehicle. He was later found guilty of aggravated rape and carjacking and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence for aggravated rape, and to ten years at hard labor for carjacking, to run consecutively to his sentence for aggravated rape.

> In *Hawkins*, 956 So.2d 146, the defendant burglarized two homes during a single day. He pled guilty to two counts of simple burglary of an inhabited dwelling and was sentenced to twelve years on each count to run concurrently to one another. For the seventeen counts of theft of a firearm, the defendant was sentenced to ten years at hard labor on each count, the sentences to run concurrently to one another, but consecutively to the sentences for simple burglary of an inhabited dwelling.

> In *State v. Runyon*, 06-823 (La.App. 3 Cir. 12/6/06), 944 So.2d 820, *writ denied*, 07-49 (La.9/21/07), 964 So.2d 330, the defendant received consecutive sentences for his convictions for manslaughter and aggravated battery, thirty years and ten years respectively, which arose out of the same course of conduct. In affirming the consecutive sentences, the court observed that the defendant initiated a violent attack of four armed men against two unarmed men in which the first victim was killed. Additionally, the court noted that the defendant exhibited little or no remorse.

> In the instant case, the trial court articulated several factors for imposing consecutive sentences, including the dangerousness and viciousness of the crime and the harm done to the victim. Additionally, the trial court noted the fact that the Defendant derived a significant benefit from his plea agreement, thereby greatly reducing his sentencing exposure. Prior to his plea, the Defendant faced a maximum possible sentence of fifty years without benefit of parole, probation or suspension of sentence for attempted first degree murder. La.R.S. 14:27 and 14:30. As such, we find that the trial court adequately and appropriately expressed its reasons for imposing consecutive sentences and, thus, did not abuse its discretion.

27

*Id.* at 732-33 (footnote omitted).

The convictions in the case at bar arose from the same act or transaction, or out of a common scheme or plan, a situation in which concurrent sentences are favored. However, the trial court adequately expressed its reasons for imposing consecutive sentences. Accordingly, assignments of error forty-three and forty-four lack merit.

**ASSIGNMENTS OF ERROR NUMBERS THIRTY-FIVE AND THIRTY-SIX**

In his thirty-fifth assignment of error, the Defendant contends defense counsel was ineffective when he stipulated to the DNA test results without cross-examining on lab foundation, protocols, mathematical calculations, and probabilities without consulting him. In his thirty-sixth assignment of error, the Defendant contends defense counsel was ineffective in that he failed to cross and point out to the jury the expert's qualifications, that she did not know how the DNA got on the knife, and the Defendant was continually inside the house for over a year.

The Defendant contends that defense counsel had no right to stipulate to the expertise of Adriana Perez in the field of DNA analysis, laboratory protocols, and handling of samples when he could have used her to testify that she did not know and could not know how his DNA and that of Jones could be "in the same house, or on the knife, or what the probabilities were when she was not present at the alleged crime scene without Defendant's informed consent."

At trial, the parties entered the following stipulations:

The State and Defense further stipulate that Ms. Perez was the scientist assigned to perform the DNA analysis in the, on these items, okay?

We further stipulate that Ms. Perez performed the DNA extractions of these above listed items using the North Louisiana Criminalistics Laboratory protocols and that the DNA profiles were obtained from the above listed items, from which Ms. Perez formed the following professional and expert opinions. Her opinion as, was A) the DNA profile obtained from the swab of suspected blood from the kitchen knife, State's Exhibit Number Nine, was consistent with the DNA profile obtained from the reference sample from Ruby Jones, State's Exhibit Number Twenty-three. The probability of finding the same DNA profile

in the DNA had come from a randomly sel . . . the probability of finding the same DNA profile if the DNA had come from a randomly selected individual other than Ruby Jones was approximately one and four hundred and eighty-nine quadrillion.

She would further testify as to expert opinion B) the DNA profile obtained from the swab from the cuticles of Garry W. McClinton, State's Exhibit Number Twenty-two (sic), was consistent with being a mixture of DNA from at least two individuals. The DNA profile from the cuticles from Garry McClinton was three hundred and forty-six trillion times more likely to be a mixture of DNA from Garry W. McClinton and Ruby Jones than a mixture of DNA from Garry W. McClinton and an unknown, unrelated individual. We would offer that stipulation.

BY MR. SHANNON: Is that our agreement?

BY MR. WILLIAMS: That is our agreement.

The Defendant fails to allege and make a showing of specific prejudice regarding the line of questioning at issue. Accordingly, the Defendant's thirty-fifth and thirty-sixth assignments of error lack merit.

## ASSIGNMENTS OF ERROR NUMBERS EIGHTEEN, NINETEEN, TWENTY-ONE, TWENTY-TWO, TWENTY-THREE, TWENTY-FOUR, AND TWENTY-FIVE

In his eighteenth assignment of error, the Defendant contends the trial court erred in overruling defense counsel's objection to the admission of S-12. In his nineteenth assignment of error, the Defendant contends defense counsel failed to object to the admission of S-13, S-14, and S-15.

In assignments of error twenty-one, twenty-two, twenty-three, twenty-four, and twenty-five, the Defendant contends defense counsel was ineffective for failing to object to the admission of S-18, S-20, S-22, S-23, and S-9 respectively.

These assignments of error have not been briefed. Accordingly, assignments of error numbers eighteen, nineteen, twenty-one, twenty-two, twenty-three, twenty-four, and twenty-five have been abandoned. Uniform Rule—Courts of Appeal, Rule 2-12.4.

## DISPOSITION

The Defendant's sentences are hereby affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform

Rules-Courts of Appeal.  Rule 2-16.3.